ACCEPTED
03-14-00535-CV
5404993
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/22/2015 4:25:30 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00535-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/22/2015 4:25:30 PM
JEFFREY D. KYLE
Clerk

**DAVID YOUNG,**
*Appellant*

**vs.**

**TRAILS END HOMEOWNERS ASSOCIATION, INC.;
TLS PROPERTIES, LTD.; TLS OPERATING COMPANY, LLC;
VAN KEENE; AND RICK DURAPAU,**
*Appellees*

On Appeal from the 200th Judicial District Court of Travis County, Texas
(Honorable Scott H. Jenkins, of the 53rd Judicial District Court, Presiding)
Trial Court Cause No. D-1-GN-10-003864

**APPELLEES TLS PROPERTIES, LTD. AND
TLS OPERATING COMPANY, LLC'S
BRIEF**

**Derek Quick**
State Bar No. 24072471
**STRASBURGER & PRICE, LLP**
720 Brazos Street, Suite 700
Austin, Texas 78701
512.499.3600
512.499.3660 – fax
derek.quick@strasburger.com
**ATTORNEYS FOR APPELLEES
TLS PROPERTIES, LTD. AND TLS
OPERATING COMPANY, LLC**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

TABLE OF AUTHORITIES ..........................................................................II

I. STATEMENT REGARDING ORAL ARGUMENT .....................................1

II. ISSUES PRESENTED (RESTATED) ...........................................................2

III. STATEMENT OF FACTS ............................................................................2

IV. SUMMARY OF THE ARGUMENT .............................................................5

V. ARGUMENT ..............................................................................................10

    A.    Has Mr. Young proven he has superior title to the Extended Property? ...........................................................................................11

        1.    Young failed to admit any legally competent evidence in support of his claim that he had superior title to the Extended Property. ..................................................................................12

        2.    Oral testimony to establish superior title is not legally competent evidence. ...............................................................14

        3.    Judicial notice of chain of title is not proper. ...........................16

    B.    Has Mr. Young proven that the Extended Property conflicts with either Lot 140 (owned by TLS) or Lot 139 and the adjoining 1.4777 acre tract (both owned by Trails End)? ...................18

        1.    There is no conflict among the properties because the Extended Property language was correctly interpreted to mean the center of that portion of Big Sandy Creek in between Lot 52 and Lot 140. ..................................................................................18

    C.    Response to Appellant's Issue No. 1: Mr. Young's claim that the 1962 plat is void as a matter of law fails for several reasons........22

    D.    Joinder in Trails End's brief..............................................................25

VI. CONCLUSION AND PRAYER .................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Coale v. Scott,*
No. 07-09-0249-CV, 2009 Tex. App. LEXIS 8976 (Tex. App.—Amarillo
Nov. 19, 2009) ...................................................................................16, 17

*Duderstadt Surveyors Supply, Inc. v. Alamo Express, Inc.,*
686 S.W.2d 351 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)...................22

*Gillum v. Temple,*
546 S.W.2d 361 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.) ........14

*Hejl v. Wirth,*
161 Tex. 609, 343 S.W.2d 226, 4 Tex. Sup. Ct. J. 223 (Tex. 1961) ..................11

*Huey v. Huey,*
200 S.W.3d 851 (Tex. App.—Dallas 2006, no pet.) ..........................................23

*Kilpatrick v. McKenzie,*
230 S.W.3d 207 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ...................11

*Murphy v. Tribune Oil Corp.,* 656 S.W.2d 587 (Tex. App.—Fort Worth
1983) .................................................................................................................14

*Ramsey v. Jones Enterprises,*
810 S.W.2d 902 (Tex. App.—Beaumont 1991, writ denied).............................14

*Rogers v. Ricane Enters.,*
884 S.W.2d 763 (Tex. 1994) .................................................................11, 13, 17

*SEI Business Systems, Inc. v. Bank One Taxes, N.A.,*
803 S.W.2d 838 (Tex. App.—Dallas 1991, no writ)...................................16, 17

*State of California Department of Mental Hygiene v. Bank of Southwest
National Association,*
354 S.W.2d 576 (Tex. 1962) .............................................................................22

*Union Pac. Resources Co. v. Mathews,*
No. 09-98-076-CV, 1998 Tex. App. LEXIS 2024 (Tex. App.—Beaumont
Apr. 2, 1998, no pet.) (not designated for publication) .....................................15

**STATUTES**

TEX. REV. CIV. STAT. ANN. Article 974a, § 5 ..........................................................22

**RULES**

TEX. R. APP. P. 38.1(i)..................................................................................................23

TEX. R. APP. P. 38.1(g)..................................................................................................2

TEX. R. CIV. P. 39........................................................................................................24

# I.
## STATEMENT REGARDING ORAL ARGUMENT

Although Appellant included "Oral Argument Requested" on the cover page of his brief, within the body of the brief, Appellant states that he believes a decision can be made on the record. Appellees TLS Properties, Ltd. and TLS Operating Company, LLC believe that oral argument is not warranted in this appeal as the case sets forth established law and undisputed facts proven at trial. Appellant failed to meet his burden to present evidence in support of his claims and Defendants supplied more than ample evidence to support their counterclaims and affirmative defenses. Accordingly, this case is appropriate for disposition by memorandum opinion without the necessity of oral argument. However, to the extent this Court grants Appellant's request for oral argument, Appellees request an opportunity to present argument as well.

## II.
## ISSUES PRESENTED (RESTATED)

1) Whether Mr. Young has proven he has superior title to the Extended Property.

2) If Mr. Young has established superior title to the Extended Property, whether the Extended Property in fact conflicts with either Lot 140 (owned by TLS) or Lot 139 and an adjoining 1.4777 acre tract (both owned by Trails End).

3) Whether the trial court was barred as a matter of law from recognizing the 1962 re-plat. (Response to Appellant's Issue No. 1.)[1]

## III.
## STATEMENT OF FACTS

In the interest of avoiding unnecessary duplication, Appellees TLS Properties, Ltd. and TLS Operating Company, LLC (collectively referred to herein as "TLS") refer the Court to the statement of facts submitted by co-Appellee Trails End Homeowners' Association (referred to herein as "Trails End"), which is incorporated by reference.

With respect to Appellant's statement of facts, pursuant to TEX. R. APP. P. 38.1(g), TLS objects to the following statements as being accepted as true, as they are either not supported by record cites, are legal conclusions, or are contradicted by other evidence in the record:

---

[1] In the body of his brief, this is generally how Appellant refers to his first issue (see page 15). In his Issues Presented (on pages 3-4), he appears to split the issue into subparts and lists them as Issues 1 and 2.

- "This testimony was corroborated by Appellees' local fact witness, June Roberts, who testified that for "three, four years" there had been no access to Lots 139 or 140, situated north and west of Young's Lot 52. 2RR.236 ll.3-17. ***This is the only testimony of use*** regarding that property in the record." (emphasis in original).

  **Objection:** TLS witness Bruce Smith provided testimony regarding use of the property at issue, including leasing it to the Trails End Homeowners' Association, use for boat access, and use as a recreation area. 2RR 216:11-218:12.

- "Smith also testified that he did not know the "gully" boundaries with respect to the property lines of Lot 52. 2RR.226 ll. 18-21."

  **Objection:** Misconstrues the testimony in the record. Mr. Smith was asked by Mr. Young, "But do you know that the south property line of Lot 52 is 200 feet away from Big Sandy Gully? Do you know that?" and Mr. Smith responded: "No, I don't know that." In addition, above the testimony cited by Mr. Young, Mr. Smith was asked "Do you know that [the south property line] does not get close to the Big Sandy Gully?" and he responded: "I don't because there is a gully there. I've seen it." 2RR 226:14-17. In other words, in this line of questioning, Mr. Young was merely attempting to get Mr. Smith to concede a point, and Mr. Smith refused to do so.

- "To do so, Crichton had to assume that the deed chain from Smith to Young does not truly extend the sidelines of Lot 52 to the "center of Big Sandy Creek." 2RR.152 ln. 22 - 2RR.153 ln. 5."

  **Objection:** Record cite does not support this assertion, and in particular, no mention is made regarding a purported "deed chain from Smith to Young."

- "Young appeared pro se, and despite difficulty, provided the necessary evidence to refute Defendants' counterclaims and to establish his claims."

  **Objection:** This is a legal conclusion.

- "His chain of title (testified over objection) arose from the 1955 conveyance and encompassed land from the extension of the sidelines of his lot "to the center of Sandy Creek." 2RR.89 ll. 2-18."

  **Objection:** As discussed below, this is legally incompetent evidence to prove his title. So although Mr. Young did testify that "the 1955 conveyance is clear that what Mr. Smith sold was the extension of the sidelines to the center of Sandy Creek, and that's what was conveyed through title to me," this should not be accepted as true for purposes of this appeal.

- "Lot 52 sideline extensions (used by Crichton in his survey) clearly show Lot 140 conflicts with the deed of Lot 52, and should demonstrate his prior title to the center of Sandy Creek. 2RR.103 ll. 4-7."

**Objection:** This is a legal conclusion. In addition, the cited testimony does not support this statement, and it is merely Mr. Young's argument about what the survey allegedly shows. The survey speaks for itself.

- "Lot 139 was an illegal plat. 2RR.105. ll. 23-24."

  **Objection:** This is a legal conclusion. In addition, the cited testimony is argument or merely a statement about Mr. Young's belief: "I wouldn't acquiesce to that position because I believe the '62 plat was illegal."

- "The 1.477 acres encroaches onto Lot 52. 2RR. 107 ll. 7-9."

  **Objection:** This is a legal conclusion. In addition, Mr. Young was being asked his contention; it is *not* evidence that the 1.477 acres in fact encroaches onto Lot 52.

## IV.
## SUMMARY OF THE ARGUMENT[2]

This lawsuit involves a parcel of land within the Trails End Subdivision, which was originally platted in 1947. Appellant David Young owns Lot 52 in the Trails End Subdivision, and alleges in this lawsuit that his property also includes "that parcel of land being the extensions of the side lot lines of Lot 52 to the center line of Big Sandy Creek" (referred to herein as the "Extended Property"). Mr. Young further alleges that the property boundaries of parcels belonging to

---

[2] Again, to avoid unnecessary duplication, TLS will not address all issues raised in Mr. Young's initial brief, but rather refers the Court to Trails End's brief, which is incorporated by reference.

Appellees TLS and Trails End encroach upon or conflict with Mr. Young's property, and more specifically, with the Extended Property (as he interprets the boundaries of the Extended Property). Mr. Young filed suit against Appellees, raising a number of tort and property based claims. However, in this appeal, Mr. Young only seeks to overturn the adverse judgment on his trespass to try title claim (and ancillary issues related to that claim, including adverse possession findings and an attorneys' fee award in favor of Trails End).[3]

Despite the focus of Mr. Young's brief on a host of other issues, Mr. Young's appeal turns on whether: 1) Mr. Young has proven he has superior title to the Extended Property; and 2) if he has established superior title to the Extended Property, whether the Extended Property in fact conflicts with either Lot 140 (owned by TLS) or Lot 139 and an adjoining 1.4777 acre tract (both owned by Trails End).

Mr. Young's appeal fails for several reasons. Mr. Young, who had the burden of proof at trial, failed to provide any evidence in support of his claim that he had superior title to the Extended Property. Importantly, it is incumbent on the *plaintiff* to recover upon the strength of his own title, not the weakness of his opponent's title. Mr. Young ignores his burden entirely, and spends most of his brief focusing on a new argument claiming that Appellees' title is somehow void

---

[3] Mr. Young's tort claims were not even mentioned in his initial brief.

because a 1962 re-plat allegedly failed to comply with a statute in effect at the time. In fact, although he never directly addresses this in his brief, Mr. Young failed to even offer his own deed into evidence at trial. In terms of written instruments in the actual record, the Extended Property language is *only* found in a 1955 deed from T.L. Smith, Jr. to Sylvia Trundle. Thus, Mr. Young did not establish superior title by proving a regular chain of conveyances from the sovereign or by proving a superior title out of a common source, as is required for his trespass to try title claim.

In an apparent effort to excuse this fatal flaw in his case, Appellant's brief points to a few lines of oral testimony from Mr. Young, and further requests that the Court take judicial notice of the chain of title. Neither attempt to establish chain of title is legally sufficient or proper. As to the former—establishing title through oral testimony—this is legally insufficient. Under Texas law, if title to real property is directly at issue, as it is in this case, proof of title must be made by written instruments. Therefore, even if Mr. Young's oral testimony did establish the full chain of title going back to the sovereign or to a common owner (which it did not, as will be shown below), the testimony would still be legally incompetent evidence and insufficient to establish his right to relief.

With regard to Mr. Young's request that the Court take judicial notice of the Trundle-Scot-Young chain—this too should be rejected by the Court. Although

judicial notice *may* be taken for the first time on appeal, appellate courts generally avoid taking judicial notice of matters which go to the merits of a dispute. Mr. Young is in essence asking this Court to completely ignore the trial on the merits, and Mr. Young's failure to present any evidence supporting his claims, and simply have the parties start over by asking the Court to take judicial notice of the critical evidence he failed to present. This not only goes to the merits of the dispute, but it is the key issue in the dispute.

In addition, even if the Court excused Mr. Young's failure to introduce into the record his deed and the full chain of title going back to a common source, which was his burden at trial, that still does not mean Mr. Young is entitled to relief. Mr. Young assumes throughout his brief that there is no dispute as to the meaning of "the center of Big Sandy Creek" contained in the 1955 Trundle deed, referring to this language as "unambiguous" and treating it as if it clearly establishes a conflict with the property owned by TLS and Trails End. However, the meaning of this language was a key issue at trial, and the trial court properly found that it should be interpreted to mean the center of that portion of the creek between Mr. Young's Lot 52 and Appellees' Lots 139 and 140. That interpretation is consistent with the 1947 plat, as well as the evidence in the record, including the testimony of Bruce Smith (the grandson of T.L. Smith, Jr. and representative of the TLS entities), a Travis County Appraisal District map, the Steger & Bizell survey,

and the expert opinion of Herman Crichton, who testified that his opinion was that the boundary of Mr. Young's Lot 52 is the center of the portion of Sandy Creek between Lot 52 and Lot 140, as depicted in the Steger & Bizzell survey. Further, Mr. Young's interpretation would cause additional conflicts with neighboring lots, even as depicted on the 1947 plat, since nearby Lots 53 and 54 contain the same Extended Property language. In other words, even going back to the original 1947 plat, Mr. Young's interpretation does not make any sense, as it would create conflicts with other neighboring lots, while Appellee's interpretation would avoid any conflict and harmonize the property boundaries in the subdivision.

Finally, Mr. Young, for the first time on appeal, contends that a 1962 re-plat was void as a matter of law for failing to comply with a re-platting statute in effect at the time. This argument also fails for a number of reasons. First, the Court should find this argument was waived for failing to present it to the trial court. Second, the statute on its face applies to "any tract of land situated within the corporate limits of any city in the State of Texas," and there is nothing in the record or in Mr. Young's brief establishing that the property at issue was within a city's corporate limits in 1962. Third, Mr. Young fails to offer any supporting authority for his claim that a failure to obtain approvals from affected landowners renders the re-plat "void as a matter of law," and the plain text of the statute shows that is not the case. Fourth, Mr. Young is asking this Court to find the 1962 re-plat

void, but Mr. Young did not join any of the neighboring property owners who would be impacted by that decision as parties in this case. And finally, even if the Court were to find that the 1962 re-plat were void as a matter of law despite all these obstacles, that still would not mean that Mr. Young prevails in his trespass to try title claims. Mr. Young would still have to show that the language in his deed means what he claims it does, and Mr. Young cannot meet this burden, particularly on this record.

For all these reasons, Mr. Young's appeal should be denied, and the trial court's judgment should be affirmed.

## V.
## ARGUMENT

Please see Trails End's brief for the appropriate standard of review, which is incorporated by reference as if set forth fully herein.

In this brief, TLS is only responding directly to Appellant's Issue No. 1 (in Subsection C. below).[4] The remaining issues will be addressed by Appellee Trails End. TLS joins in and incorporates by reference Trails End's briefing on those issues.

Prior to addressing Appellant's Issue No. 1, however, TLS must address two issues that Appellant failed to directly address in its brief, but which are issues that

---

[4] As noted in footnote 1, Appellant appears to split Issue 1 from the body of his brief into Issues 1 and 2 in his Statement of Issues.

TLS believes are fatal to Mr. Young's appeal. Specifically, those issues are: (1) whether Mr. Young has proven he has superior title to the Extended Property; and 2) if he has established superior title to the Extended Property, whether that Extended Property in fact conflicts with either Lot 140 (owned by TLS) or Lot 139 and an adjoining 1.4777 acre tract (both owned by Trails End).

## A.    Has Mr. Young proven he has superior title to the Extended Property?

In a trespass to try title claim, under "well-established Texas law," it is incumbent on the Plaintiff to recover upon the strength of his own title, not the weaknesses of Defendants' title. *Kilpatrick v. McKenzie*, 230 S.W.3d 207, 213-214 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Hejl v. Wirth*, 161 Tex. 609, 610-11, 343 S.W.2d 226, 4 Tex. Sup. Ct. J. 223 (Tex. 1961)); *see also Rogers v. Ricane Enters.*, 884 S.W.2d 763, 768 (Tex. 1994). The plaintiff may recover (1) by proving a regular chain of conveyances from the sovereign, (2) by proving a superior title out of a common source, (3) by proving title by limitations, or (4) by proving prior possession, and that the possession has not been abandoned. *Rogers*, 884 S.W.2d at 768. Therefore, the burden rested upon Mr. Young, as plaintiff below, to prove a prima facie right to title and possession by one of these methods. *Kilpatrick*, 230 S.W.3d at 213-214.

Moreover, any purported issues with a defendant's title are irrelevant unless and until a plaintiff establishes his prima facie right to title. *See id.* at 214:

[W]hen, as in this case, the defendant is shown to be in possession of the land in controversy and the plaintiffs fail to establish their prima facie right to title, judgment must be entered in the defendant's favor. This is true even though the defendant may have pled a title that he failed to establish, because under this well-settled and unforgiving law, plaintiffs are not entitled to recover unless their own title has been affirmatively proven.

### 1. Young failed to admit any legally competent evidence in support of his claim that he had superior title to the Extended Property.

As noted above, Mr. Young contends that he owns Lot 52, along with the Extended Property defined as "that parcel of land being the extensions of the side lot lines of Lot 52 to the center line of Big Sandy Creek." In his brief, Mr. Young raises a number of arguments, including why he believes the 1962 re-plat is allegedly void, why T.L. Smith, Jr. could not give away what he did not own, and why the Extended Property language is allegedly unambiguous and that it means Mr. Young owns the land "all the way to the center of Big Sandy Creek" (though Mr. Young never does show precisely *where* this would be should he prevail).[5] Mr. Young, however, failed to prove a threshold issue at trial, *making all these other issues on appeal irrelevant*. Specifically, as the trial court correctly found in Finding of Fact No. 14, "Plaintiff did not offer any credible evidence that he owns the Extended Property, as described above."

---

[5] This was true both at the trial court and in his Initial Brief. In other words, throughout this entire litigation, Mr. Young has never provided any indication of where the precise boundary line should be, other than some undefined point at the "center of Big Sandy Creek."

In fact, at the trial below, Mr. Young <u>failed to even offer his own deed</u> into evidence at trial, much less the intervening deeds between the conveyance from T.L. Smith, Jr. to Ms. Trundle and the conveyance in which Mr. Young ultimately acquired his property. In terms of written instruments that were admitted in the record, the ***only*** deed in which the Extended Property language is found is in a 1955 deed from T.L. Smith, Jr. to Sylvia Trundle.[6] Thus, Young did not establish superior title to the Extended Property by proving a regular chain of conveyances from the sovereign or by proving a superior title out of a common source, as is required for his trespass to try title claim. *Rogers*, 884 S.W.2d at 768. Without proof in the record that he had title to the Extended Property, any contention that the Extended Property conflicts with TLS's and Trails End's properties is entirely irrelevant as it relates to Mr. Young.

Curiously, Mr. Young does not even address, much less attempt to excuse, this critical omission in his brief. Rather, he sidesteps the issue by asserting in his Statement of Facts that his chain of title was established through his oral testimony.[7] Mr. Young also requests, in connection with his argument that the deeds are unambiguous, that the Court simply take judicial notice of his chain of

---

[6] Plaintiff's Exhibit 4, included in Appellant's Appendix at Tab 5.

[7] *See* Appellant's Brief at 10 ("His chain of title (testified over objection) arose from the 1955 conveyance and encompassed land from the extension of the sidelines of his lot "to the center of Sandy Creek.") (citing Mr. Young's testimony at 2RR.89 ll. 2-18).

title back to Ms. Trundle.[8]  As shown below, however, neither attempt is proper, and both should be rejected by the Court.

### 2. Oral testimony to establish superior title is not legally competent evidence.

Under Texas law, "[w]here title to real property is directly in issue, proof of title must be made by written instruments."  *Murphy v. Tribune Oil Corp.*, 656 S.W.2d 587, 589 (Tex. App.—Fort Worth 1983, writ dism'd) (citing *Gillum v. Temple*, 546 S.W.2d 361 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.)).  In *Murphy*, the only evidence offered to establish title to certain mineral interests was oral expert testimony, and the court held that the expert testimony was "no evidence of any right to the mineral interests claimed by appellees."  *Murphy,* 656 S.W.2d at 589.  Mr. Young did not even go that far; all he offered was his own conclusory lay witness testimony.  This is not legally competent evidence to establish his superiority of title.  *See id.*:

> In this case no written documentation was offered to prove that appellees were successors in title to McCrory.  The only evidence offered to prove that allegation was in the form of oral testimony. In a case such as this such testimony is not legally competent evidence.

*See also Ramsey v. Jones Enterprises*, 810 S.W.2d 902, 905 (Tex. App.—Beaumont 1991, writ denied) (holding that party failed to meet its burden when only evidence supporting trespass to try title claim was oral testimony of expert);

---

[8] *See* Appellant's Brief at 18 ("Here, the subject property deeds to the Trundle-Scot-Young chain of title are unambiguous. Judicial notice of that chain is hereby requested.").

*Union Pac. Resources Co. v. Mathews*, No. 09-98-076-CV, 1998 Tex. App. LEXIS 2024, at \*6 (Tex. App.—Beaumont Apr. 2, 1998, no pet.) (not designated for publication) ("Interestingly, the record does not establish ownership of the subject property. . . . Oral testimony of title is not sufficient probative evidence, even if given by an expert.").

Moreover, the entirety of Mr. Young's testimony that he claims establishes his chain of title, and that his property encompassed land from the extension of the sidelines of his lot "to the center of Sandy Creek," is as follows:

> We can talk about issues after the '62 plat, but the 1955 conveyance is clear that what Mr. Smith sold was the extension of the sidelines to the center of Sandy Creek, and that's what was conveyed through title to me.[9]

Significantly, the testimony Mr. Young cites does not include any discussion about the various transactions that occurred between the 1955 conveyance from T.L. Smith, Jr. to Ms. Trundle and the conveyance in which Mr. Young ultimately acquired title (and Mr. Young does *not* claim that he acquired title directly from Ms. Trundle). Therefore, even if oral testimony is considered competent evidence, the testimony on which Mr. Young relies still does not establish a chain of title to a common source.

---

[9] The additional lines cited by Mr. Young only contained objections from counsel and discussion from the Court regarding the scope of Mr. Young's testimony as a lay witness.

### 3. Judicial notice of chain of title is not proper.

As to the latter attempt at establishing chain of title—Mr. Young's request that the Court take judicial notice of the Trundle-Scot-Young chain[10]—this too should be rejected by the Court. Even though courts *may* take judicial notice at any time, even on appeal, "appellate courts are reluctant to take judicial notice of matters which go to the merits of a dispute." *SEI Business Systems, Inc. v. Bank One Taxes, N.A.*, 803 S.W.2d 838, 840-841 (Tex. App.—Dallas 1991, no writ) (concluding that taking judicial notice was not proper when evidence went to merits of dispute). As the Amarillo Court of Appeals explained in denying a motion for judicial notice:

> Documents that are not a part of the clerk's record or reporter's record are not part of the appellate record and may not be considered by the reviewing court. As a general rule, appellate courts take judicial notice only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law (e.g., calculation of prejudgment interest when the court renders judgment). Even though there are limited circumstances where an appellate court might take judicial notice of undisputed facts, to do so in this case runs the risk of effectively rendering this Court into one of original, not appellate jurisdiction.

*Coale v. Scott*, No. 07-09-0249-CV, 2009 Tex. App. LEXIS 8976, at *2 (Tex. App.—Amarillo Nov. 19, 2009) (per curiam order on motion for judicial notice) (internal citations and quotations omitted).

---

[10] *See* Brief at 18 ("Here, the subject property deeds to the Trundle-Scot-Young chain of title are unambiguous. Judicial notice of that chain is hereby requested.").

Here, the evidence for which Mr. Young requests judicial notice goes to the very heart of the dispute. Indeed, establishing superior title by showing his chain of title to the sovereign or a common source is how Mr. Young (as Plaintiff) had to establish his prima facie case under his trespass to try title cause of action. *Rogers*, 884 S.W.2d at 768. Mr. Young is in essence asking this Court to completely disregard his failure to admit (or even offer) his deed into the record (as well as any other deeds in the alleged chain of title other than the Trundle deed), and to allow Mr. Young a second bite at trying to prove his case. To do so would be "effectively rendering this Court into one of original, not appellate jurisdiction." *Coale*, 2009 Tex. App. LEXIS 8976 at *2; *see also SEI Business Systems*, 803 S.W.2d at 841 ("The Court of Appeals is not a trier of fact. For us to consider evidence for the first time, never presented to the trial court, would effectively convert this Court into a court of original, not appellate jurisdiction.") (internal quotations omitted). Accordingly, the request for judicial notice should be rejected by the Court.[11]

---

[11] It should also be noted that the deed Mr. Young attaches to his brief does not even contain the Extended Property language from the Trundle deed on which he bases his whole case ("together with that parcel of land being the extensions of the side lot lines of Lot 52 to the center line of Big Sandy Creek"). *See* Appellant's Appendix at Tab 8.

**B.    Has Mr. Young proven that the Extended Property conflicts with either Lot 140 (owned by TLS) or Lot 139 and the adjoining 1.4777 acre tract (both owned by Trails End)?**

Assuming Mr. Young could establish that he owns the Extended Property despite his failure to offer his own deed into evidence at trial, much less the complete chain of title going back to a common source, the next issue is whether Mr. Young has proven that the Extended Property actually conflicts with the properties owned by TLS and Trails End.  Throughout his brief, Mr. Young assumes that there is no dispute as to the meaning of "the center of Big Sandy Creek" contained in the 1955 Trundle deed, referring to this language as "unambiguous" and treating it as if it clearly establishes a conflict with the lots owned by TLS and Trails End.  However, the meaning of this language was a key issue at trial, and the evidence established that the only reasonable interpretation was that it meant the center of that portion of Big Sandy Creek between Mr. Young's Lot 52 and Lot 140 (the lot owned by TLS).

**1.    There is no conflict among the properties because the Extended Property language was correctly interpreted to mean the center of that portion of Big Sandy Creek in between Lot 52 and Lot 140.**

The trial court correctly found in Finding of Fact No. 16 that "[t]he Extended Property does not conflict with Lot 139, Lot 140, the 1.4777-acre tract,

or West Darleen Drive."[12]  This is because the meaning of the Extended Property language in the Trundle deed was properly interpreted to mean the center of that portion of Big Sandy Creek between Lot 52 and Lot 140.  This is consistent with what the Steger & Bizzell survey[13] shows to be the boundary, and this is what Trails End's expert (the only expert who offered testimony at trial), Mr. Herman Crichton, testified was his interpretation as to the boundary of Mr. Young's Lot 52.[14]

Significantly, Mr. Young offered no competing survey showing an alternative boundary, nor did he offer any expert testimony that supports his argument as to where the boundary should lie.  In fact, Mr. Young has never explained precisely *where* the boundary should be if the Court were to accept his interpretation of the Extended Property language.  This is yet another reason Mr. Young failed to meet his burden of proof.[15]

In addition, the trial court's interpretation of the Extended Property language is supported by the testimony of Mr. Smith, the TLS representative[16] and grandson of T.L. Smith, Jr.[17]  For example, Mr. Smith testified that the area between Lot 52

---

[12] *See* TLS Appendix at Tab 3 (Clerk's Record at p.184).
[13] Defendant's Exhibit 20, included in TLS Appendix at Tab 1.
[14] 2 R.R. 162:10-163:2.
[15] This also makes it impossible to "render judgment in favor of Young," as he requests.
[16] 2 R.R. 212:10-12.
[17] 2 R.R. 213:20-21.

and Lot 140 is a part of Big Sandy Creek.[18] When examining the Travis County Appraisal District maps that were admitted into the record,[19] Mr. Smith explained how those documents also referred to the area between the properties as "Sandy Creek Arm," which is also the same label used for the area of the creek where Mr. Young apparently believes the extension language is referring.[20] Mr. Smith also testified about the Steger & Bizzell survey, and how that survey showed the centerline of the Sandy Creek Arm as the boundary between Lot 140 and Lot 52.[21] Mr. Smith testified that the boundary shown on the survey was consistent with his understanding of the boundary between Lot 140 and Lot 52.[22]

The sole testifying expert at trial, Mr. Crichton, also testified that he reviewed property records regarding adjoining lots in the area, specifically, Lots 53 and 54, and those lots contain the same extension language as the Trundle deed, but there were platted lots between Lots 53 and 54 and the center of Sandy Creek (that is, if "Sandy Creek" is interpreted as Mr. Young contends it should be, as opposed to that part of the creek between Lot 52 and Lot 140).[23] In other words, interpreting the disputed Extended Property language to mean the center of that part of Sandy Creek that is located between Lot 52 and Lot 140 would not only

---

[18] 2 R.R. 218:20-22.
[19] Defendant's Exhibit 30 at TCAD 0007, included in TLS Appendix at Tab 2.
[20] *Id.*; 2 R.R. 219:7-25.
[21] 2 R.R. 220:6-19.
[22] 2 R.R. 220:20-24.
[23] 2 R.R. 160:21-161:11.

mean there is no conflict among Mr. Young's property and Trails End's and TLS's properties, but that interpretation would also harmonize neighboring property boundaries and not create new boundary conflicts among property owners who are not parties to this suit.[24]

As for Mr. Young's suggestion that the part of Sandy Creek between Lot 52 and Lot 140 somehow developed or appeared at some point after the 1947 plat,[25] Mr. Young points to no evidence to support this claim. And in fact, the 1947 plat does not even label what constitutes Big Sandy Creek (it refers to the main area of the creek as Lake Travis), but it *does* depict the part of the creek running between Lot 56 and Lots 52, 53, and 54. (Lot 56 was the lot that was eventually re-platted in 1962 to create Lots 139 and 140).[26] Therefore, TLS and Trails End's interpretation does not conflict with the 1947 plat and it harmonizes neighboring property boundaries, while Mr. Young's interpretation would cause Lots 52, 53, and 54 to cut across and conflict with platted properties (and this is true even prior to the 1962 re-plat).

For all these reasons, the trial court was correct in finding that the Extended Property does not conflict with Lot 139, Lot 140, the 1.4777-acre tract, or West

---

[24] *See* TLS Appendix at Tab 1 (Defendant's Exhibit 20); Appellant's Appendix at Tab 2 (Plaintiff's Exhibit 2 (1947 plat)); 2 R.R. 162:10-163:2.

[25] *See* Appellant's Brief at 20 ("Even if the development of a "gully" took place between the period of 1947, when the legal plat was formed, the botched 1962 re-plat, and the surveys performed in preparation for the case at bar . . . .").

[26] 3 R.R. 60:8-13.

Darleen Drive,[27] and Mr. Young has not shown he is entitled to reversal on his trespass to try title claims even if he had shown he owned and had superior title to the Extended Property.

**C.     Response to Appellant's Issue No. 1:  Mr. Young's claim that the 1962 plat is void as a matter of law fails for several reasons.**

Finally, TLS will respond to Mr. Young's argument that the trial court was "barred as a matter of law from recognizing the botched 1962 re-plat" and that the 1962 re-plat is void as a matter of law.  In support of this argument, Mr. Young refers to TEX. REV. CIV. STAT. ANN. art. 974a, § 5, arguing that under this statute, re-plats may not be authorized unless permission is obtained from all affected land-owners.[28]  This argument fails for a number of reasons.

First, Mr. Young has waived any argument that the re-plat failed to comply with this statute, as this argument was never presented to the trial court.  *See Duderstadt Surveyors Supply, Inc. v. Alamo Express, Inc.*, 686 S.W.2d 351, 354 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (citing *State of California Department of Mental Hygiene v. Bank of Southwest National Association*, 354 S.W.2d 576, 581 (Tex. 1962)) ("It is well settled Texas law that an allegation not contained in the pleadings nor otherwise raised or proven in the trial court cannot

---

[27] *See* TLS Appendix at Tab 3 (Clerk's Record at p.184, Findings of Fact 16).

[28] Within this issue, Mr. Young also makes the argument that T.L. Smith, Jr. could not convey what he did not own.  This argument, however, presumes that Mr. Young is correct as to the interpretation of the Extended Property language.  As discussed above, the record does not support Mr. Young's interpretation, but rather fully supports the trial court's finding that there is no conflict between the Extended Property and any of the property owned by TLS or Trails End.

be raised for the first time on appeal."). The first time Mr. Young ever made any reference to this statute was in his initial brief.

Second, the statute on its face applies to "any tract of land situated within the corporate limits of any city in the State of Texas."[29] There is nothing in the record or in Mr. Young's brief establishing that the property at issue was within a city's corporate limits in 1962. Thus, Mr. Young has not shown that the statute even applies to the property at issue.

Third, Mr. Young fails to offer any legal authority supporting his claim that a failure to obtain approvals from affected landowners renders the re-plat "void as a matter of law." *See* Appellant's Brief at 16; TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, *with appropriate citations to authorities* and to the record.") (emphasis added); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) ("Failure to cite applicable authority or provide substantive analysis waives an issue on appeal."). Moreover, the plain text of the statute does not support Mr. Young's contention, as it provides that a re-plat "may be vacated . . . at any time before the sale of any lot therein."[30]

---

[29] *See* Appellant's Appendix at Tab 3, Sec. 1.

[30] Appellant's Appendix at Tab 3. Specifically, Section 5 reads: "That any such plan, plat or replat may be vacated by the proprietors of the land covered thereby at any time before the sale of any lot therein by a written instrument declaring the same to be vacated, duly executed, acknowledged and recorded in the same office as the plat to be vacated, provided the approval of the City Planning Commission or governing body of such city, as the case may be, shall have

Fourth, Mr. Young is asking this Court to find the 1962 re-plat void, but Mr. Young did not join any of the neighboring property owners whose property interests would be directly impacted by that decision as parties in this case. *See* TEX. R. CIV. P. 39.

And finally, even if the Court were to find that the 1962 re-plat were void as a matter of law despite all these obstacles, that still would not mean that Mr. Young prevails in his trespass to try title claims. Mr. Young still had to prove he had superior title to the Extended Property, which he failed to do, and he would have to show that the trial court's interpretation of the Extended Property language was incorrect, which he has not. As discussed above, the trial court was correct in concluding that the Extended Property language in the Trundle deed refers to the center of that portion of Big Sandy Creek located between Lot 52 and Lot 140, such that there is no conflict between the Extended Property and any of the lots owned by Trails End and TLS.[31]

Accordingly, Mr. Young's argument that the 1962 re-plat is void as a matter of law is not only without merit, but it would not support reversal in any event.

---

been obtained as above provided, and the execution and recordation of such shall operate to destroy the force and effect of the recording of the plan, plat or replat so vacated."

[31] For the same reason, Mr. Young's argument that T.L. Smith, Jr. improperly attempted to re-plat land already sold and conveyed to Sylvia Trundle also fails.

**D.** **Joinder in Trails End's brief.**

TLS hereby joins in and incorporates by reference the arguments made in the initial brief of Trails End regarding Appellant's remaining issues.

## VI.
## <u>CONCLUSION AND PRAYER</u>

Appellees TLS Properties Ltd. and TLS Operating Company, LLC respectfully request that the District Court's Final Judgment be affirmed in its entirety, and that the Court grant all other relief to which they may be entitled.

Respectfully submitted,

*/s/ Derek Quick*
**Derek Quick**
State Bar No. 24072471
**STRASBURGER & PRICE, LLP**
720 Brazos Street, Suite 700
Austin, Texas 78701
512.499.3600
512.499.3660 – fax
derek.quick@strasburger.com

**ATTORNEYS FOR APPELLEES TLS PROPERTIES, LTD. AND TLS OPERATING COMPANY, LLC.**

## RULE 9.4 CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 5,335 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Derek Quick*

Derek Quick

## CERTIFICATE OF SERVICE

This is to certify that on this 22nd day of May, 2015, a true and correct copy of the above and foregoing document was electronically mailed to the parties registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this Court upon:

Stephen Casey
Casey Law Office, P.C.
595 Round Rock West Drive
Suite 102
Round Rock, Texas 78681
stephen@caseylawoffice.us
**Counsel for Appellant David Young**

Christopher R. Mugica
cmugica@jw.com
Emilio B. Nicolas
enicolas@jw.com
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
**Counsel for Appellees Trails End Homeowners Association And Van Keene**

W. Thomas Buckle
Jeff Tippens
State Bar No. 24009121
Scanalan, Buckle & Young, P.C.
602 West 11th Street
Austin, Texas 78701
tbuckle@sbylaw.com
jtippens@sbylaw.com
**Counsel for Appellee Trails End Homeowners Association, Inc.**

Rick Durapau, *Pro Se*
11907 Misty Brook Drive
Austin, Texas 78727
rdurapau@gmail.com
**Pro Se Appellee**

*/s/ Derek Quick*
Derek Quick

**NO. 03-14-00535-CV**

_____

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS**

_____

**DAVID YOUNG**
*Appellant*

**vs.**

**TRAILS END HOMEOWNERS ASSOCIATION, INC.; TLS PROPERTIES,
LTD.; TLS OPERATING COMPANY, LLC; VAN KEENE; AND RICK
DURAPAU**
*Appellees*

_____

On Appeal from the 200th Judicial District Court of Travis County, Texas
(Honorable Scott H. Jenkins, of the 53rd Judicial District Court, Presiding)
Trial Court Cause No. D-1-GN-10-003864

_____

**APPELLEES TLS PROPERTIES, LTD. AND
TLS OPERATING COMPANY, LLC'S
APPENDIX**

_____

**Derek Quick**
State Bar No. 24072471
**STRASBURGER & PRICE, LLP**
720 Brazos Street, Suite 700
Austin, Texas 78701
512.499.3600
512.499.3660 – fax
derek.quick@strasburger.com
**ATTORNEYS FOR APPELLEES
TLS PROPERTIES, LTD. AND TLS
OPERATING COMPANY, LLC**

# **APPENDIX**

1.      Steger & Bizzell Survey (Defendants' Ex. 20).................................. Tab 1

2.      TCAD Map (excerpt from Defendants' Ex. 30)................................ Tab 2

3.      Copy of Findings of Fact and Conclusions of Law............................ Tab 3

Defendants' Exhibit 20





Survey For
Trails End Homeowners Association
Lots 139 & 140
Resubdivision No.5, Block #57
Trails End Subdivision
Travis County, Texas

Steger & Bizzell Engineering, Inc.

Defendants' Exhibit 30



# TRAVIS CENTRAL APPRAISAL DISTRICT

**BOARD OFFICERS**

RICHARD LAVINE
CHAIRPERSON
KRISTOFFER S. LANDS
VICE CHAIRPERSON
ED KELLER
SECRETARY/TREASURER



MARYA CRIGLER
CHIEF APPRAISER

**BOARD MEMBERS**

TOM BUCKLE
BRUCE ELFANT
SHELLDA D. GRANT
DENNY HAMILL
ELEANOR POWELL
RICO REYES
BLANCA ZAMORA-GARCIA

## CERTIFICATE

I, Jerry Oehler, am the GIS Department Director of the Travis Central Appraisal District and custodian of its records. I hereby certify that the attached record(s) are true and correct copies of the original record which is on file at the Travis Central Appraisal District.

_____
Jerry Oehler

**SWORN TO AND SUBSCRIBED** before me on the 6th day of March, 2013 to certify which witness my hand and official seal.



DEBBE STROUSE
MY COMMISSION EXPIRES
May 29, 2015

_____
Notary Public in and for the State of Texas

My Commission Expires on: May 29, 2015

Enclosure:
Map 18455 dated 5/22/2012
Map 18455 date range 5/2000 – 8/2008
Map 18455 date range 6/1999 – 5/2000
Map 18455 date range 5/1985 – 7/1998

Map 18655 dated 8/30/12
Map 18655 date range 12/1999 – 11/2000
Map 18655 date range 5/1985 – 12/1999

## DEFENDANT'S EXHIBIT 30          TCAD 0002



This tax map was compiled solely for the use of TCAD. Areas depicted by these digital products are approximate and are not necessarily accurate to mapping, surveying or engineering standards. Conclusions drawn from this information are the responsibility of the user. The TCAD makes no claims, promises or guarantees about the accuracy, completeness or adequacy of this information and expressly disclaims liability for any errors and omissions. The mapped data does not constitute a legal document.

NAD_1983_StatePlane_
Texas_Central_FIPS_4203_Feet
Projection: Lambert_Conformal_Conic

0    100
Feet

N

18655

Revision Date:
8/30/2012

Travis Central Appraisal District
8314 Cross Park Drive          P.O. Box 149012
Austin, Texas 78764            Austin, Texas 78714
Internet Address: www.traviscad.org
Main Telephone Number (512) 834-9317
Appraisal Information (512) 834-9318
TDD (512) 836-3328

TCAD 0007

CAUSE NO. D-1-GN-10-003864

| | | |
|---|---|---|
| DAVID YOUNG, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 200TH JUDICIAL DISTRICT |
| | § | |
| TRAILS END HOMEOWNERS | § | |
| ASSOCIATION, INC., TLS PROPERTIES, | § | |
| LTD., TLS OPERATING COMPANY, | § | |
| LLC, VAN KEENE, and RICK DURAPAU, | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

Pursuant to Rule 297 of the Texas Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law following the bench trial of this lawsuit.

### I.
### FINDINGS OF FACT

1. The parties to this lawsuit are Plaintiff David Young ("Plaintiff") and Defendants Trails End Homeowners Association, Inc. (the "Association"), TLS Properties, Ltd. ("TLS Properties"), TLS Operating Company, LLC ("TLS Operating Company"), Van Keene ("Keene"), and Rick DuRapau ("DuRapau").

2. This lawsuit involves the following six properties in the Trails End Subdivision of Travis County, Texas:

   a. Lot 52, which was platted according to a map of the Trails End Subdivision in Travis County, Texas that was recorded in the real property records of Travis County, Texas in 1947 (the "1947 Plat"), a copy of which was admitted in evidence as Plaintiff's Exhibit No. 2.

   b. Lot 139, which was platted according to a map of the Trails End

1

Subdivision in Travis County, Texas that was recorded in the real property records of Travis County, Texas in 1962 (the "1962 Plat"), a copy of which was admitted in evidence as Defendants' Exhibit No. 6. Lot 139 is properly described in a deed recorded in the real property records of Travis County, Texas on November 17, 2008, and admitted in evidence as Defendants' Exhibit No. 17 (the "2008 Deed"). Lot 139 is properly depicted in the land survey prepared by Crichton & Associates, Inc. and admitted in evidence as Defendants' Exhibit No. 21, (the "2014 Land Survey"). At all relevant times, Lot 139 has been suited for use as a preserved area or parkland.

c. Lot 140 was also platted in the 1962 Plat. Lot 140 is properly described in a special warranty deed recorded in the real property records of Travis County, Texas on April 21, 1998, and admitted in evidence as Defendants' Exhibit No. 12 (the "1998 TLS Properties Deed"). Lot 140 is properly described in the land survey prepared by Steger & Bizzell Engineering, Inc. and admitted in evidence as Defendants' Exhibit No. 20. At all relevant times, Lot 140 has been suited for use as a boat launch or other point of access to Lake Travis when underwater, and as a preserved area or parkland when not underwater.

d. A parcel of land between the extension of the side lines of Lot 52 to the center of Big Sandy Creek (the "Extended Property").

e. A 1.4777-acre tract of land adjoining Lot 139 (the "1.4777-acre tract"), which is properly depicted in a 2008 quitclaim deed between TLS Properties and the Association admitted in evidence as Defendants' Exhibit No. 18 (the "2008 Quitclaim"), as well the 2014 Land Survey. The 1.4777-acre tract is suited for use as a preserved area or parkland.

f. West Darleen Drive, including the portion known as West Darleen Drive Extension (collectively, "West Darleen Drive"), which was also platted in the 1962 Plat. West

2

Darleen Drive is properly depicted in the 2014 Land Survey. West Darleen Drive is a public right-of-way used to access Lot 139, Lot 140, and/or the 1.4777-acre tract.

3.      In 1962, T.L. Smith, Jr. recorded the 1962 Plat in the real property records of Travis County, Texas, thereby creating Lots 139 and 140.

4.      Plaintiff purchased Lot 52 at least 10 years prior to filing this lawsuit.

5.      Pursuant to a special warranty deed recorded in the real property records of Travis County, Texas on January 30, 1998, TLS Properties and TLS Operating Company acquired joint ownership of Lot 139, Lot 140, and the 1.4777-acre tract from T.L. Smith, Jr.'s successors in interest.

6.      Pursuant to the 1998 TLS Properties Deed, TLS Operating Company conveyed all of its interests in Lot 139, Lot 140, and the 1.4777-acre tract to TLS Properties.

7.      During the entire time when it owned Lot 139 and the 1.4777-acre tract, TLS Properties used those properties as preserved areas or parklands; or TLS Properties leased those properties to the Association, and the Association used those properties as preserved areas or parklands.

8.      During the entire time when it owned Lot 140, and through the present, TLS Properties used the property as a boat launch or other point of access to Lake Travis, as a preserved area, or as a parkland; or TLS Properties leased the property to the Association, which the Association used as preserved areas or parklands until a time in 2007 or 2008 when Plaintiff interfered in the Association's negotiations with TLS Properties to purchase Lot 140.

9.      During the entire time when it owned Lot 139, Lot 140, and the 1.4777-acre tract, TLS Properties paid the taxes on those properties.

10.      Pursuant to the 2008 Deed, the Association acquired ownership of Lot 139 from

3

TLS Properties.

11. Pursuant to the 2008 Quitclaim, the Association acquired ownership of the 1.4777-acre tract from TLS Properties.

12. Since purchasing Lot 139 and the 1.4777-acre tract in 2008, the Association has used those properties as preserved areas or parklands; and has paid the taxes on those properties.

13. Plaintiff currently owns Lot 52, as platted and described above.

14. Plaintiff did not offer any credible evidence that he owns the Extended Property, as described above.

15. Lot 52, as platted, does not conflict with Lot 139, Lot 140, the 1.4777-acre tract, or West Darleen Drive.

16. The Extended Property does not conflict with Lot 139, Lot 140, the 1.4777-acre tract, or West Darleen Drive.

17. The Association currently owns Lot 139, as platted and described above; and the 1.4777-acre tract as described above.

18. TLS Properties currently owns Lot 140, as platted and described above.

19. Neither Keene nor DuRapau owns, or claims to own, Lots 52, 139, or 140, the 1.4777-acre tract, or the Extended Property.

20. Plaintiff knew about, or was aware of, the existence, public use, and location of West Darleen Drive at least ten years before he filed this lawsuit.

21. The Association, its members, and the public have continually used West Darleen Drive as a public right-of-way to access to Lot 139, Lot 140, and the 1.4777-acre tract.

22. The Association, TLS Properties, and TLS Operating Company, respectively, acquired, leased or used Lot 139, Lot 140, the 1.4777-acre tract, and/or West Darleen Drive in

4

good faith and without knowledge that they might conflict with Plaintiff's actual or purported real property interests.

23. In or after 2008, Plaintiff entered on, erected a gate on, and placed rocks and boulders on a part of West Darleen Drive that runs through or adjacent to Lot 139 and the 1.4777-acre tract, as further described in the 2014 Land Survey, in an effort to block access to Lot 140.

24. Plaintiff physically, intentionally, and voluntarily entered on Lot 139 and/or the 1.4777-acre tract in order to construct the above-described blockade.

25. Plaintiff did not have the Association's permission to enter on Lot 139 or the 1.4777-acre tract for the purpose of constructing the above-described blockade.

26. Plaintiff did not have the Association's permission to construct the above-described blockade.

27. Plaintiff's above-described blockade restricted the right of the Association and its members to make full use and enjoyment of Lot 139 and the 1.4777-acre tract.

28. Plaintiff's above-described blockade also restricted the right of the Association and its members to access Lot 140, which TLS Properties had given them permission to access.

29. Plaintiff filed this lawsuit on November 1, 2010.

30. Plaintiff did not offer any admissible or credible evidence of:

a. business disparagement involving the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau;

b. tortious interference with prospective contractual relationship involving the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau;

c. trespass involving the Association, TLS Properties, TLS Operating

5

185

Company, Keene, or DuRapau;

d.     conversion involving the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau;

e.     monetary damages; or

f.     exemplary damages.

31.     The reasonable and necessary amount of attorneys' fees incurred by the Association through trial to defend against Plaintiff's declaratory judgment claims, and to prosecute the Association's declaratory judgment counterclaims, was $50,000.00.

32.     The reasonable and necessary amount of attorneys' fees the Association will incur to defend against Plaintiff's pursuit of an unsuccessful appeal to the Third Court of Appeals for the State of Texas of the parties' respective declaratory judgment claims will be $20,000.00.

33.     The reasonable and necessary amount of attorneys' fees the Association will incur to defend against Plaintiff's unsuccessful petition for review to the Supreme Court of Texas concerning the parties' respective declaratory judgment claims will be $5,000.00.

34.     The reasonable and necessary amount of attorneys' fees the Association will incur to defend against Plaintiff's unsuccessful appeal to the Supreme Court of Texas of the parties' respective declaratory judgment claims will be $10,000.00.

## II.
## CONCLUSIONS OF LAW

35.     Plaintiff's status as a pro se litigant before or during trial did not excuse him from complying with any procedural rules, or from being held to the same standards as a licensed attorney.

36.     The parties' real property dispute was a boundary dispute and, therefore, was subject to resolution under the Texas Uniform Declaratory Judgment Act, Ch. 37, TEX. CIV.

6

PRAC. & REM. CODE §§ 37.001 *et seq.*

37.    Plaintiff failed to satisfy his burden of proof for his declaratory judgment claim.

38.    Plaintiff failed to satisfy his burden of proof for his a claim for removal of cloud on title and/or suit to quiet title ("suit to quiet title").

39.    Plaintiff failed to satisfy his burden of proof for his trespass to try title claim.

40.    As a result of the recording of the 1962 Plat, Plaintiff and his predecessors in title had constructive notice of the claim of:

    a.    the Association and its predecessors in title to title of Lot 139 and the 1.4777-acre tract since 1962; and

    b.    TLS Properties and its predecessors in title to title of Lot 140 since 1962.

41.    As a result of the recording of the 1962 Plat, Plaintiff and his predecessors in title had constructive notice since 1962 of the claim of T.L. Smith, Jr. and his successors in title to Lot 139, Lot 140, and the 1.4777-acre tract.

42.    As a result of the recording of the 2008 Deed and its preceding chain of title documents, Plaintiff had constructive notice no later than 1998 that the Association and its predecessors in title claimed ownership of Lot 139 by title or color of title.

43.    As a result of the recording of the 1998 TLS Properties Deed and its preceding chain of title document, Plaintiff had constructive notice no later than 1998 that TLS Properties and its predecessors in title claimed ownership of Lot 140 by title or color of title.

44.    As a result of the recording of the 2008 Deed and its preceding chain of title documents, Plaintiff had constructive notice no later than 1998 that the Association and its predecessors in title claimed ownership of the 1.4777-acre tract by title or color of title.

45.    The Association was a bona fide purchaser of Lot 139.

7

46. The Association was a bona fide purchaser of the 1.4777-acre tract.

47. Plaintiff did not offer sufficient evidence to raise an issue of fact with respect to his claim for:

a. business disparagement against the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau;

b. tortious interference with prospective contractual relationship against the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau;

c. trespass against the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau;

d. conversion against the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau; or

e. exemplary damages against the Association, TLS Properties, TLS Operating Company, Keene, or DuRapau.

48. Plaintiff's declaratory judgment claim, suit to quiet title, and trespass to try title claim are all barred by limitations.

49. The Association satisfied its burden of proof for its trespass to try title counterclaim.

50. The Association satisfied its burden of proof for its declaratory judgment counterclaim to determine the property description for and boundaries of Lot 139.

51. The Association satisfied its burden of proof for its declaratory judgment counterclaim to determine the property description for and boundaries of the 1.4777-acre tract.

52. The Association satisfied its burden of proof for its declaratory judgment counterclaim to declare that West Darleen Drive is a public right-of-way is a public right-of-way

over which the Association and its members have the right to travel fully and freely.

53.     Plaintiff obstructed or interfered with the Association's right to access and use West Darleen Drive as a public right-of-way by unlawfully blockading West Darleen Drive.

54.     Plaintiff also obstructed or interfered with the Association's right to access, possess, use, and enjoy Lot 139 and the 1.4777-acre tract by unlawfully blockading West Darleen Drive.

55.     Plaintiff trespassed onto Lot 139 and the 1.4777-acre tract.

56.     Permanently enjoining Plaintiff from obstructing or interfering with the Association's ingress and egress over any portion of West Darleen Drive (including both the paved portion and the unpaved portions of the public right-of-way) is an adequate and appropriate remedy under the circumstances.

57.     Permanently enjoining Plaintiff from trespassing onto, obstructing, or interfering with the Association's access to – or possession, use, and enjoyment of – Lot 139 and the 1.4777-acre tract is an adequate and appropriate remedy under the circumstances.

58.     The Association established its entitlement to an award of attorneys' fees under Section 37.009 of the Texas Uniform Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE § 37.009; and it was equitable and just to award attorneys' fees to the Association thereunder.

59.     The amount of attorneys' fees awarded to the Association were reasonable and necessary.

**IT IS SO ORDERED.**

SIGNED and ORDERED on this 14th day of July                    , 2014

_____
THE HONORABLE SCOTT H. JENKINS
JUDGE PRESIDING

9

**APPROVED AS TO FORM AND SUBSTANCE BY:**

**JACKSON WALKER L.L.P.**

By: _____
Christopher R. Mugica (TSBN 24027554)
Emilio B. Nicolas (TSBN 24058022)
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002
ATTORNEYS FOR DEFENDANTS TRAILS
END HOMEOWNERS ASSOCIATION, INC.
AND VAN KEENE

**SCANLAN, BUCKLE & YOUNG, P.C.**

By: _____
W. Thomas Buckle (TSBN 03299000)
Jeff Tippens (TSBN 24009121)
602 West 11th Street
Austin, Texas 78701
Telephone: (512) 478-4651
Facsimile: (512) 478-7750
ATTORNEYS FOR DEFENDANT TRAILS
END HOMEOWNERS ASSOCIATION, INC.

**STRAUSBURGER & PRICE, LLP**

By: _____
Derek Quick (TSBN 24072471)
Katherine McFarland (TSBN 24083980)
720 Brazos Street, Suite 700
Austin, Texas 78701
Telephone: (512) 499-3600
Facsimile: (512) 499-3660
ATTORNEYS FOR DEFENDANTS
TLS PROPERTIES, LTD.
AND TLS OPERATING COMPANY, LLC.

**RICK DURAPAU**

By: _____

11907 Misty Brook Drive
Austin, Texas 78727
Telephone: (512) 346-4359
Facsimile: n/a
PRO SE / DEFENDANT RICK DURAPAU

**DAVID YOUNG**

By: _____

10336 W. Darleen Drive
Leander, Texas 78641
Telephone: (512) 487-5701
Facsimile: n/a
PRO SE / PLAINTIFF DAVID YOUNG

10

**APPROVED AS TO FORM AND SUBSTANCE BY:**

**JACKSON WALKER L.L.P.**

By: _____
    Christopher R. Mugica (TSBN 24027554)
    Emilio B. Nicolas (TSBN 24058022)
    100 Congress Avenue, Suite 1100
    Austin, Texas 78701
    Telephone: (512) 236-2000
    Facsimile: (512) 236-2002
ATTORNEYS FOR DEFENDANTS TRAILS
END HOMEOWNERS ASSOCIATION, INC.
AND VAN KEENE

**SCANLAN, BUCKLE & YOUNG, P.C.**

By: _____
    W. Thomas Buckle (TSBN 03299000)
    Jeff Tippens (TSBN 24009121)
    602 West 11th Street
    Austin, Texas 78701
    Telephone: (512) 478-4651
    Facsimile: (512) 478-7750
ATTORNEYS FOR DEFENDANT TRAILS
END HOMEOWNERS ASSOCIATION, INC.

**STRAUSBURGER & PRICE, LLP**

By: _____
    Derek Quick (TSBN 24072471)
    Katherine McFarland (TSBN 24083980)
    720 Brazos Street, Suite 700
    Austin, Texas 78701
    Telephone: (512) 499-3600
    Facsimile: (512) 499-3660
ATTORNEYS FOR DEFENDANTS
TLS PROPERTIES, LTD.
AND TLS OPERATING COMPANY, LLC.

**RICK DURAPAU**

By: _____
    11907 Misty Brook Drive
    Austin, Texas 78727
    Telephone: (512) 346-4359
    Facsimile: n/a
PRO SE / DEFENDANT RICK DURAPAU

**DAVID YOUNG**

By: _____
    10336 W. Darleen Drive
    Leander, Texas 78641
    Telephone: (512) 487-5701
    Facsimile: n/a
PRO SE / PLAINTIFF DAVID YOUNG

10

APPROVED AS TO FORM AND SUBSTANCE BY:

JACKSON WALKER L.L.P.

SCANLAN, BUCKLE & YOUNG, P.C.

By: _____
    Christopher R. Mugica (TSBN 24027554)
    Emilio B. Nicolas (TSBN 24058022)
    100 Congress Avenue, Suite 1100
    Austin, Texas 78701
    Telephone: (512) 236-2000
    Facsimile: (512) 236-2002
ATTORNEYS FOR DEFENDANTS TRAILS
END HOMEOWNERS ASSOCIATION, INC.
AND VAN KEENE

By: _____
    W. Thomas Buckle (TSBN 03299000)
    Jeff Tippens (TSBN 24009121)
    602 West 11th Street
    Austin, Texas 78701
    Telephone: (512) 478-4651
    Facsimile: (512) 478-7750
ATTORNEYS FOR DEFENDANT TRAILS
END HOMEOWNERS ASSOCIATION, INC.

STRAUSBURGER & PRICE, LLP

RICK DURAPAU

By: _Kat McF_____
    Derek Quick (TSBN 24072471)
    Katherine McFarland (TSBN 24083980)
    720 Brazos Street, Suite 700
    Austin, Texas 78701
    Telephone: (512) 499-3600
    Facsimile: (512) 499-3660
ATTORNEYS FOR DEFENDANTS
TLS PROPERTIES, LTD.
AND TLS OPERATING COMPANY, LLC.

By: _____
    11907 Misty Brook Drive
    Austin, Texas 78727
    Telephone: (512) 346-4359
    Facsimile: n/a
PRO SE / DEFENDANT RICK DURAPAU

DAVID YOUNG

By: _____
    10336 W. Darleen Drive
    Leander, Texas 78641
    Telephone: (512) 487-5701
    Facsimile: n/a
PRO SE / PLAINTIFF DAVID YOUNG

10

APPROVED AS TO FORM AND SUBSTANCE BY:

JACKSON WALKER L.L.P.

By: _____
    Christopher R. Mugica (TSBN 24027554)
    Emilio B. Nicolas (TSBN 24058022)
    100 Congress Avenue, Suite 1100
    Austin, Texas 78701
    Telephone: (512) 236-2000
    Facsimile: (512) 236-2002
ATTORNEYS FOR DEFENDANTS TRAILS
END HOMEOWNERS ASSOCIATION, INC.
AND VAN KEENE

SCANLAN, BUCKLE & YOUNG, P.C.

By: _____
    W. Thomas Buckle (TSBN 03299000)
    Jeff Tippens (TSBN 24009121)
    602 West 11th Street
    Austin, Texas 78701
    Telephone: (512) 478-4651
    Facsimile: (512) 478-7750
ATTORNEYS FOR DEFENDANT TRAILS
END HOMEOWNERS ASSOCIATION, INC.

STRAUSBURGER & PRICE, LLP

By: _____
    Derek Quick (TSBN 24072471)
    Katherine McFarland (TSBN 24083980)
    720 Brazos Street, Suite 700
    Austin, Texas 78701
    Telephone: (512) 499-3600
    Facsimile: (512) 499-3660
ATTORNEYS FOR DEFENDANTS
TLS PROPERTIES, LTD.
AND TLS OPERATING COMPANY, LLC.

RICK DURAPAU

By: _____
    11907 Misty Brook Drive
    Austin, Texas 78727
    Telephone: (512) 346-4359
    Facsimile: n/a
PRO SE / DEFENDANT RICK DURAPAU

DAVID YOUNG

By: _____
    10336 W. Darleen Drive
    Leander, Texas 78641
    Telephone: (512) 487-5701
    Facsimile: n/a
PRO SE / PLAINTIFF DAVID YOUNG

10